**STATE of Utah, Plaintiff and Appellee,**

v.

**Edward H. JAMES, Defendant and Appellant.**

No. 920264–CA.

Court of Appeals of Utah.

Aug. 2, 1993.

Elizàbeth A. Bowman and Elizabeth Holbrook, Salt Lake City, for defendant and appellant.

Jan Graham and Charlene Barlow, Salt Lake City, for plaintiff and appellee.

Before Judges Garff, Greenwood, and Orme.

GREENWOOD, Judge:

Defendant Edward H. James appeals from a conviction of burglary, a second degree felony, in violation of Utah Code Ann. § 76-6-202 (1990), and theft, a class A misdemeanor, in violation of Utah Code Ann. § 76-6-404 (1990). Defendant entered a conditional guilty plea pursuant to *State v. Sery,* 758 P.2d 935, 938-39 (Utah App.1988), and appeals on the basis that the trial court erred by denying his motion to suppress his confession. We affirm.

## BACKGROUND

Defendant, an eighteen-year-old American Indian, was arrested and booked on burglary and theft charges on March 28, 1991. Two detectives, who had not previously met defendant, requested that he be brought to an interviewing room the morning after defendant was arrested. Without giving a *Miranda*[1] warning, the detectives told defendant that they were conducting a "follow-up investigation" of the burglary and theft. They then asked defendant about his name, birthday, birthplace, living arrangements, and employment. The detectives testified that when they asked

---

**1.** As required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

about defendant's employment, defendant answered that he was presently unemployed, and then, after a pause, "said at that point that he got the idea in his head and that he did it, he went into a neighbor's house and took a coat and stereo, and they found it."

The detectives testified that they then interrupted defendant and immediately administered a *Miranda* warning. Defendant indicated that he understood his rights. He asked "what was going to happen," and again confessed to having committed the burglary. The detectives also testified that no physical force, deception, artifice or intimidation was used to compel defendant to confess. They said defendant spoke English, appeared to have all his faculties, and evidenced no signs of the influence of drugs or alcohol.

After a preliminary hearing, the magistrate found probable cause to support both charges and bound the case over to the district court. At a subsequent hearing, defendant moved to suppress his confessions, claiming they were obtained in violation of his Fifth and Sixth Amendment rights. The two detectives testified as previously indicated. Defendant offered no evidence to contradict that of the detectives. The trial judge initially indicated he intended to suppress defendant's confession because the *Miranda* warning should have been given at the beginning of the interview. Subsequently, after having reviewed case law cited by counsel, the trial court denied the motion to suppress. The trial court later executed findings of fact submitted by counsel for the State, over defendant's objections. The findings state, in part, as follows:

5. Detective Cheever questioned the defendant about his present employment to which the defendant responded that he was presently unemployed, and then, after a pause, volunteered that during times when he was unemployed was when he got into trouble, that this is when he gets things into his head and does them, and admitted to the burglary.
6. Detectives Newren and Cheever interrupted the defendant and read him his

rights pursuant to *Miranda v. Arizona,* to which the defendant responded that he understood each of those rights and agreed to speak to the Detectives about the burglary. The defendant thereupon gave a detailed confession about the burglary.

7. No coercion or deception of any kind was exercised by the Detectives in order to induce the defendant to speak with the police.

Defendant filed a second motion to suppress, with a supporting memorandum. The trial court conducted a hearing on the motion, took the matter under advisement and again denied the motion, observing that "[t]he court believed that confession made by the defendant was done in a non accusatory [sic] environment." This appeal followed defendant's conditional guilty plea and sentencing.

## ISSUES

On appeal defendant claims (1) the trial court's findings are defective, (2) his confessions both before and after the *Miranda* warning should be suppressed under federal constitutional law, (3) failure to record his interrogation violated federal and state due process, and (4) his confessions should also be suppressed under the Utah Constitution.

## ANALYSIS

### Factual Findings

■■■ Defendant challenges the trial court's findings of fact. In assessing this challenge, we note that although this court applies a correction of error standard when reviewing a trial court's legal conclusions, when assessing a trial court's ruling on a motion to suppress, we "will not disturb the factual findings underlying the ruling unless they are clearly erroneous." *State v. Mincy,* 838 P.2d 648, 652 (Utah App. 1992) (citation omitted), *cert. denied,* 843 P.2d 1042 (Utah 1992). Both Utah R.Crim.P. 12(c) and Utah R.Civ.P. 52(a) require that the trial court specify its findings on the record where resolution of fac-

tual issues is necessary in determining a motion. *State v. Marshall*, 791 P.2d 880, 882 (Utah App.1990), *cert. denied*, 800 P.2d 1105 (Utah 1990). Generally, findings must be sufficiently detailed to allow the appellate court to review the trial court's decision.

■ Defendant specifically claims that the trial court should not have adopted and executed the findings of fact as prepared by the State because these findings did not truly reflect the trial court's own assessment of the evidence. Defendant further argues that the findings are inconsistent and incongruent with both the evidence and the trial court's earlier oral findings.[2] However, to assist a trial court in making the necessary findings for a particular case, the court may request counsel to submit proposed findings. *Boyer Co. v. Lignell*, 567 P.2d 1112, 1113 (Utah 1977).

■ The Utah Supreme Court has cautioned against the trial court's mechanical adoption of findings prepared by counsel. *Id.* In determining whether the trial court adequately participated in adopting findings prepared by counsel, Utah's appellate courts look to the record and will affirm the findings if there is "no indication from the record ... that the trial judge failed to adequately deliberate and consider the merits of the case." *Automatic Control Products Corp. v. Tel–Tech, Inc.*, 780 P.2d 1258, 1260 (Utah 1989). *See also Alta Indus. Ltd. v. Hurst*, 846 P.2d 1282, 1286 (Utah 1993). When there is inconsistency between a memorandum decision and written findings and conclusions, it may be that the trial judge has changed his or her mind. *State v. Rio Vista Oil, Ltd.*, 786 P.2d 1343, 1347 (Utah 1990). Unless it is alleged on appeal that the findings don't reflect the judge's view, the appellate court "must assume that he found them satisfactory in all particulars." *Id.*

■ When objections have been filed by an opposing party, it is assumed that the court has examined those objections, in the absence of evidence to the contrary. *Alta Indus.*, 846 P.2d at 1286. Thus, findings prepared by counsel for a prevailing party and adopted verbatim by a trial court are considered to be those of the trial court judge and may not be rejected out-of-hand, but they will stand if supported by evidence. *United States v. El Paso Natural Gas Co.*, 376 U.S. 651, 656, 84 S.Ct. 1044, 1047, 12 L.Ed.2d 12 (1964).

■ In this case, arguments before the trial court focused primarily on case law addressing admissibility of confessions. The two detectives testified as to the circumstances under which defendant confessed, both before and after he was given the *Miranda* warning. The trial court requested memoranda from counsel and took the matter under advisement. At the trial court's request, the State submitted proposed findings of fact, conclusions of law, and defendant filed objections. The trial court subsequently executed the findings as submitted by the State. Nothing in the record before us indicates that the trial court did not carefully consider both the proposed findings and defendant's objections. The trial court also conducted a hearing on defendant's second motion to suppress, considered further memoranda, and again denied the motion, stating that his view of the facts was consistent with the findings of fact which he had signed. Furthermore, the findings of fact are supported by the evidence presented, particularly the uncontroverted testimony of the two detectives. In addition, the findings do not conflict with any prior orders of the trial court. Therefore, defendant has not provided argument or evidence to rebut the presumption that the findings were appropriately entered by the trial court.

### Post–*Miranda* Statement

Defendant argues that his post-Miranda confession should have been suppressed because it followed the earlier confession obtained without waiver of *Miranda*. He also contends that the circumstances sur-

---

**2.** Defendant also argues that the legal basis for the court's findings is unclear in both the findings of fact and the conclusions of law. We analyze the legal arguments elsewhere in this opinion.

rounding both statements were inherently coercive because two much older, experienced Caucasian detectives interrogated him in an isolated room. We must consider, therefore, (1) whether a confession obtained after a *Miranda* waiver is barred because of a pre-*Miranda* confession, and (2) if the trial court's finding of no coercion in defendant's interrogation was proper.

The first issue was definitively addressed by the United States Supreme Court in *Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985). The *Elstad* court noted that the Fifth Amendment prohibits only coerced confessions. *Id.* at 306–07, 105 S.Ct. at 1292. "The failure of police to administer *Miranda* warnings does not mean that the statements received have actually· been coerced." *Id.* at 310, 105 S.Ct. at 1293.

■ Unless the record indicates otherwise, failure to administer a *Miranda* warning before interrogating defendant does not create a presumption that defendant's second confession was compelled. Instead, "the admissibility of any subsequent statement should turn ... on whether it is knowingly and voluntarily made." *Id.* at 309, 105 S.Ct. at 1293. The *Elstad* opinion concluded its analysis by stating:

> We must conclude that, absent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion. *A subsequent administration of Miranda warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement.* In such circumstances, the finder of fact may reason-

ably conclude that the suspect made a rational and intelligent choice whether to waive or invoke his rights.

*Id.* at 314, 105 S.Ct. at 1296 (emphasis added). In accordance with this ruling, defendant's post-*Miranda* confession in this case is admissible evidence unless it was obtained by coercion.

Therefore, we next address the trial court's finding that defendant's statements were not coerced, noting that a "trial court's ultimate conclusion of voluntariness is reviewed for correctness and the court's underlying factual findings are upheld unless clearly erroneous." *State v. Thurman,* 846 P.2d 1256, 1269 (Utah App.1993).

■ While we recognize that any "confinement in jail provides a suspect setting for coercive interrogations," *State v. Miller,* 829 P.2d 132, 134 (Utah App.1992), *cert. denied,* 836 P.2d 1383 (Utah 1992), a confession given while in custody does not, per se, render the confession involuntary. *Miranda v. Arizona,* 384 U.S. 436, 479, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966). Interrogation must reflect a greater measure of compulsion than that inherent in custody itself. *Id.*

■ Importantly, defendant's characterization of the interrogation setting as inherently coercive is based on speculation alone, not evidence presented to the trial court. This characterization conflicts with our responsibility to assess the voluntariness of a confession[3] by analyzing the characteristics of the accused and the details of the interrogation. *Miller,* 829 P.2d at 134. Based on this specific criteria, we conclude that no overtly or inherently coercive circumstances existed which raise serious due process concerns in this case.[4]

---

3. The Supreme Court noted that "'virtually no statement would be voluntary because very few people give incriminating statements in the absence of official action of some kind' ... thus ... neither linguistics nor epistemology will provide a ready definition of the meaning of 'voluntariness.'" *Schneckloth v. Bustamonte,* 412 U.S. 218, 224, 93 S.Ct. 2041, 2046, 36 L.Ed.2d 854 (1973).

4. The circumstances of this case are distinguishable from cases in which appellate courts found violations of due process. *See Darwin v. Connecticut,* 391 U.S. 346, 88 S.Ct. 1488, 20 L.Ed.2d 630 (1968) (suspect interrogated for 48 hours incommunicado while officers denied access to counsel); *Beecher v. Alabama,* 389 U.S. 35, 88 S.Ct. 189, 19 L.Ed.2d 35 (1967) (officer fired rifle next to suspect's ear and said "If you don't tell the truth I am going to kill you"); *Clewis v. Texas,* 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d

Without more, the age and race of defendant and of the detectives do not suggest coercion. The detectives testified, without contradiction, that they used no physical force, deception, artifice or intimidation to compel defendant to confess. Defendant offered no evidence refuting their testimony that defendant spoke English, appeared to have all his faculties, and displayed no indicia of drug or alcohol influence during their interrogation.

Likewise, the size of the interrogation room and the presence of the two officers do not lead automatically to a conclusion of coercion. Rather, the record shows that defendant suddenly and impulsively confessed his crime when asked about his employment. We, therefore, find that the evidence supports the trial court's underlying findings of no coercion and that the trial court's ultimate conclusion of voluntariness is legally correct. As a result, the trial court did not err by denying defendant's motion to suppress his post-*Miranda* confession.

### Pre-*Miranda* Statement

■■■■■■ Defendant also argues that the detectives should have sought a waiver of his rights at the outset of the interrogation and that their failure to do so requires suppression of his pre-*Miranda* confession. The trial court ruled that defendant's pre-*Miranda* confession was admissible under the reasoning of *Pennsylvania v. Muniz*, 496 U.S. 582, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990), because it was obtained during the booking process. Because we have concluded that the later statement was admissible we need not address defendant's argument regarding the pre-*Miranda* statement. When statements obtained from a defendant after a *Miranda* waiver are deemed admissible, admission of earlier statements may constitute harmless error,

if error at all. *State v. Bishop*, 753 P.2d 439, 465 (Utah 1988) (citation omitted). While we have doubts about characterizing the interrogation in this case as part of the booking process rather than as an investigative interview, we need not address the admissibility of the earlier statement because any error in that regard was harmless. The second, post-*Miranda* confession rendered the earlier statement unnecessary for the State's case because the second statement contained all the information in the first statement, as well as additional detail.

### Recording Interrogation

■■■■■ Defendant argues that the detectives' failure to record the interrogation verbatim violated his constitutional guarantee of due process under both the federal and state constitutions. We disagree because "custodial interrogations need not be recorded to satisfy the due process requirements of the U.S. Constitution relating to the preservation of evidence." *People v. Everette*, 187 Ill.App.3d 1063, 135 Ill.Dec. 472, 479, 543 N.E.2d 1040, 1047 (1989) (citing *California v. Trombetta* 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984)).

The Alaska Supreme Court held in *Stephan v. State*, 711 P.2d 1156, 1160–62 (Alaska 1985), that its constitutional due process provision required police officers to record a suspect's statements whenever practicable. Other states have not followed Alaska's example, however. "Although some state legislatures have adopted statutes mandating the recording of such statements, the majority of state courts which have considered this issue in response to a claim of a state constitutional violation have specifically rejected the

423 (1967) (suspect was arrested without probable cause, interrogated for nine days with little food or sleep, and gave three unwarned "confessions" each of which he immediately retracted); *Reck v. Pate*, 367 U.S. 433, 439 n. 3, 81 S.Ct. 1541, 1545 n. 3, 6 L.Ed.2d 948 (1961) (mentally retarded youth interrogated incommunicado for a week " 'during which time he was frequently

ill, fainted several times, vomited blood on the floor of the police station and was twice taken to the hospital on a stretcher' "); and *State v. Badger*, 141 Vt. 430, 450 A.2d 336 (1982) (unwarned "close and intense" station house questioning of 15–year–old, including threats and promises, resulted in confession at 1:20 a.m.).

Alaska court's conclusion." *Gale v. State,* 792 P.2d 570, 588 (Wyo.1990); *Jimenez v. State,* 105 Nev. 337, 775 P.2d 694, 697 (1989); *State v. Gorton,* 149 Vt. 602, 548 A.2d 419, 421 (1988); *People v. Raibon,* 843 P.2d 46, 49 (Colo.App.1992). *See e.g. State v. Rhoades,* 119 Idaho 594, 809 P.2d 455, 462 (1991) (concurring opinion); *State v. Spurgeon,* 63 Wash.App. 503, 820 P.2d 960, 961–63 (1991); *Williams v. State,* 522 So.2d 201, 208 (Miss.1988). Absent legislation or precedent from the Utah Supreme Court, we do not believe it would be appropriate to require, by judicial fiat, that all statements taken of a person in custody be recorded or transcribed. *Everette,* 135 Ill.Dec. at 479, 543 N.E.2d at 1047.

Although, in accord with other courts, we refrain from requiring recording of interrogations under the Utah Constitution, we note several policy reasons for recording interrogations. These include avoiding unwarranted claims of coercion and avoiding actual coercive tactics by police. In addition, recording an interrogation may show the "voluntariness of the confession, the context in which a particular statement was made, and ... the actual content of the statement." *Williams,* 522 So.2d at 208.

### *Miranda* Warnings and the Utah Constitution

Finally, defendant claims that regardless of the evolution of voluntariness requirements under the federal constitution, the *Elstad* doctrine should be rejected under our state constitution.[5] Defendant argues that the state constitutional standard is stricter than the federal constitution, and, therefore, provides him greater protection. Specifically, defendant urges us to reject the federal interpretation of *Miranda* requirements as reflected in *Elstad* and other cases, and retain what he regards as the integrity of the *Miranda* decision as a matter of state law. Defendant also argues

---

5. Article I, § 7 of the Utah Constitution provides in relevant part that "[n]o person shall be deprived of life, liberty or property, without due process of law." Article I, § 12 of the Utah Constitution provides, "The accused shall not be compelled to give evidence against himself."

6. Upon remand of *Elstad* by the United States Supreme Court, the Oregon Court of Appeals

for extension of the *Miranda* doctrine by means of the Utah Constitution.

 Although the state constitutional issue was properly raised before the trial court, we need not analyze and address every issue on appeal. *State v. Carter,* 776 P.2d 886, 888 (Utah 1989). We are concerned that a separate state standard might generate confusion in this area and agree that "there is no value in being different merely for the sake of the difference." *State v. Kell,* 303 Or. 89, 734 P.2d 334, 336 (1987). Therefore, we decline at this time to develop a separate constitutional standard governing admissibility of confessions under the Utah Constitution.[6]

### CONCLUSION

The trial court did not err under the United States or Utah Constitutions in denying defendant's motion to suppress his post-*Miranda* confession. We therefore affirm defendant's conviction.

ORME and GARFF, JJ., concur.

---

ruled that "[w]e do not find, nor has defendant identified, principles, precedents or criteria that persuade us to adopt a different rule ... '[where] unwarned questioning "did not abridge respondent's constitutional privilege ... but departed only from the prophylactic standards later laid down by this Court in *Miranda* to safeguard that privilege." ' " *State v. Elstad,* 78 Or. App. 362, 717 P.2d 174, 176 (1986) (citations omitted).