RON RUDIN AND RON RUDIN REALTY AND CON-
STRUCTION CO., APPELLANTS, *v.* NEVADA REAL
ESTATE ADVISORY COMMISSION, RESPONDENT.

No. 6085

July 7, 1970                                                471 P.2d 658

*W. Owen Nitz,* of Las Vegas, for Appellants.

*W. Bruce Beckley,* of Las Vegas, for Respondent.

# OPINION

By the Court, Thompson, J.:

The district court affirmed a decision of the Nevada Real Estate Advisory Commission suspending the real estate licenses of the appellants for a period of six months for several violations of the real estate code, ch. 645 NRS.[1] The appellants contend that the administrative hearing before the Commission was unfair and denied them due process. The appellants were properly notified of the charges against them, of the hearing to be held thereon, and were represented throughout by competent counsel of their choice. Their contention that the administrative hearing was unfair rests mainly upon three incidents which, in combined effect, are claimed to have destroyed any possibility of a fair hearing. The incidents are: first, the appellants were not timely served with a copy of a report relating to the matter as required by statute; second, counsel for the Commission, who acted in the role of prosecutor, prepared proposed findings and decision and sent them to the Commission without notice to the appellants; third, the Commission, in deciding the matter, drew an impermissible inference from appellant Ron Rudin's refusal to testify with regard to one aspect of the charges against him.

1.   NRS 645.680(4) provides that at least 20 days prior to the hearing the licensee shall receive "copies of any and all communications, reports, affidavits or depositions in possession of the real estate division touching or relating to the matter in question." The chief investigator for the Commission had prepared a "complaint analysis" during the course of his investigation of Rudin. The licensees, Rudin and Rudin Realty and Construction Co., did not receive a copy of that document prior to the hearing. The Commission's explanation for failing to deliver it to the licensees is that it is an internal document and not within the contemplation of the statute. We do not decide

---

[1] The most significant violations concerned the handling of money in a manner condemned by NRS 645.310(3)(4)(5). Although the sufficiency of the evidence is questioned, our review of the record shows substantial evidence to support the decision. We shall not recite it for to do so would serve no useful purpose.

this point since the record shows that a copy was made available to counsel for the licensees during the hearing and could have been used by him to cross-examine the chief investigator had he elected to do so. Cf. Mears v. State, 83 Nev. 3, 8, 422 P.2d 230 (1967); Walker v. State, 78 Nev. 463, 468, 376 P.2d 137 (1962); State v. Bachman, 41 Nev. 197, 208, 168 P. 733 (1917). If time was needed to study the report, a continuance for that purpose could have been requested. Counsel did not so request. In these circumstances the tardy delivery of the report did not prejudice the licensees. Nevada Tax Commission v. Mackie, 75 Nev. 6, 12, 333 P.2d 985 (1959).

2. After the hearing, counsel for the Commission, who prosecuted the matter, prepared proposed findings and decision and submitted them to the Commission without notice to the appellants-licensees. The proposals were adopted verbatim except as to the penalty to be imposed.

It is not uncommon in administrative law to find the combination of investigating, prosecuting and judging functions. As a general proposition, such a combination, standing alone, does not constitute a denial of due process. 2 Davis, Administrative Law Treatise § 13.02. Such combination of functions possesses the potential for unfairness, but unfairness is not its inevitable consequence. In the matter at hand that combination did not exist. The investigation was conducted by investigators, the prosecution, by counsel for the Commission, and the decision was made by the Commission itself. There is nothing to suggest that the prosecutor decided the case. The Commission heard the evidence and examined the exhibits. This alone sets this proceeding apart from Morgan v. United States, 304 U.S. 1 (1938), so heavily relied upon by the appellants. The Commission was free to accept, modify or reject the proposed findings and decision submitted by counsel. Indeed, the proposed decision was changed as to penalty, thus establishing the exercise of an independent judgment by the Commission. It is preferable that one trained in law prepare those documents. In court litigation the findings and judgment routinely are prepared by counsel for the prevailing party. We see no sound reason for denouncing that practice in administrative agency matters.

Counsel for the Commission did not submit a copy of the proposed findings and decision to counsel for the licensees. When this hearing occurred, neither the real estate code nor

the administrative procedure act required such submission to the adversary. The administrative procedure act now seems to require it. NRS 233B.126. In any event, it is a preferred practice. In this instance, however, the failure to do so does not give us cause to set aside the agency decision since it is supported by substantial evidence and is clothed with the presumption of validity. Randono v. Nevada Real Estate Commission, 79 Nev. 132, 379 P.2d 537 (1963). We may not assume that the decision would have been different had counsel for the licensees been afforded an opportunity to object to the proposed findings and decision.

3. In finding against the licensees the Commission noted that Ron Rudin had refused to answer a question concerning one of the several charges, upon the ground that his answer might tend to incriminate him. It was his privilege to claim that constitutional protection, and no effort was made to compel an answer. The licensees contend, however, that it was impermissible for the Commission to draw an adverse inference from such refusal to answer.

The self-incrimination clause of the Fifth Amendment is applicable to the states [Malloy v. Hogan, 378 U.S. 1 (1964)] and to disciplinary proceedings for misconduct. Spevack v. Klein, 385 U.S. 511 (1967). In Spevack, the High Court ruled that a lawyer could not be disbarred solely because he refused to testify at a disciplinary proceeding on the ground that his testimony would tend to incriminate him. The dishonor of disbarment and the deprivation of a livelihood cannot be the price exacted for asserting the privilege. A violation of this Fifth Amendment privilege may, however, be harmless in the context of a particular case. Chapman v. California, 386 U.S. 18 (1967). Before such a violation may be deemed harmless, we must be able to declare our belief that it was harmless beyond a reasonable doubt. Chapman v. California, supra. We so declare in this instance. The appellants-licensees were charged with several violations. Rudin's assertion of his Fifth Amendment privilege concerned only one of those violations. There was ample evidence to support the Commission's findings in respect to each violation including the subject concerning which Rudin refused to give testimony. In these circumstances, the inference from such refusal to testify, though impermissible, was truly harmless with regard to the result reached.

4. Other assertions of error have been examined and are

without merit. The district court properly sustained the Commission.

Affirmed.

COLLINS, C. J., ZENOFF, BATJER, and MOWBRAY, JJ., concur.