Haven M. WHITEAR, Petitioner,

v.

LABOR COMMISSION; Brown & Root, Inc.; Highlands Insurance; and Employers' Reinsurance Fund, Respondents.

No. 981037–CA

Court of Appeals of Utah.

Dec. 24, 1998.

Hans M. Scheffler, Salt Lake City, for Petitioner.

Stuart L. Poleman and Dori K. Petersen, Salt Lake City, for Respondent Brown & Root, Inc., and Highlands Insurance Company.

Alan Hennebold, Salt Lake City, for Respondent Labor Commission.

Erie V. Boorman, Salt Lake City, for Respondent Employers' Reinsurance Fund.

Before WILKINS, Associate P.J., and GREENWOOD and ORME, JJ.

## OPINION

WILKINS, Associate Presiding Judge:

Petitioner Haven M. Whitear appeals a decision of the Utah Labor Commission (Commission) denying him permanent total disability workers' compensation benefits for an industrial accident. We affirm.

## BACKGROUND

On March 10, 1987, petitioner was injured in an industrial accident while employed by Brown & Root, when a toxic chemical known as Fyrquel 220 spilled on him. Petitioner pursued medical treatment for asthma and depression which he attributed to the acci-dent. Petitioner filed an application for a hearing on April 22, 1987, in which he sought a declaration of Brown & Root's liability for workers' compensation benefits arising out of the accident. However before the hearing, the parties notified Administrative Law Judge, Timothy C. Allen, that Brown & Root accepted liability for the accident and agreed to pay all of petitioner's outstanding medical expenses. While Judge Allen accepted petitioner's claim as a compensable accident, he found that insufficient evidence existed at that time to support petitioner's claim of temporary total disability and possible permanent partial impairment as a result of the accident. Accordingly, Judge Allen dismissed the claim pending further medical evaluation.

On February 15, 1993, petitioner filed a second application for a hearing, claiming entitlement to permanent partial disability benefits. Petitioner amended the application to include a claim for permanent total disability. In its answer, Brown & Root denied all liability. Judge Allen held a hearing on February 22, 1994. Following the hearing, Judge Allen issued his Preliminary Findings of Fact and referred the claim to a medical panel for its evaluation of the medical issues. The medical panel, consisting of three licensed physicians, determined that the sole cause of petitioner's asthma was the industrial accident and gave petitioner a 10% whole person permanent impairment rating. The medical panel further reported that the industrial accident was not the cause of petitioner's depression.

Judge Allen entered an Interim Order on April 20, 1995, rejecting the panel's finding that petitioner's depression was unrelated to the industrial accident. In doing so, he adopted the opinion of petitioner's treating psychologist, that a causal connection existed between the industrial accident and the depression. Thereafter, Judge Allen entered a tentative finding of permanent total disability. Brown & Root objected to the Interim Order and filed a Motion for Review. The Commission granted Brown & Root's motion and instructed Judge Allen to conduct a hearing on the medical panel's report, specifi-

cally focusing on the cause of petitioner's depression.

Subsequently, this case was reassigned to Administrative Law Judge Donald L. George. Judge George held a hearing on February 7, 1996, at which time two members of the medical panel were present and testified. Following the hearing, Judge George accepted the panel's conclusion that petitioner's depression was not caused by the industrial accident and consequently dismissed petitioner's claim for permanent total disability benefits on that ground. Also, Judge George determined that petitioner was not medically disabled from work as a result of his asthma and therefore, denied permanent total disability benefits based upon the asthma injury. Judge George requested that Brown & Root's counsel prepare proposed findings of fact, conclusions of law and an order.

Petitioner filed a Motion for Review on August 16, 1996. On December 19, 1997, the Commission affirmed the dismissal of petitioner's claim. Petitioner now seeks review of the Commission's decision denying him permanent total disability benefits.

## ISSUES AND STANDARD OF REVIEW

Petitioner raises four issues on appeal. First, petitioner challenges the Commission's factual findings that he is not permanently and totally disabled due to asthma, that his depression is not a result of the industrial accident, and that he is not a credible witness. Second, petitioner asserts that he was denied a hearing on his claim for permanent total disability compensation, in violation of his due process rights under the Utah Administrative Procedures Act (UAPA) and the Utah Constitution. Third, petitioner argues the Commission erred in ordering a hearing on the medical panel's report. Finally, petitioner contends the Commission erred in approving Judge George's request that Brown & Root's attorney draft proposed findings of fact and conclusions of law.

■ The applicable standard of review for a formal adjudicative hearing is determined by UAPA. *See* Utah Code Ann § 63–46b–16 (1997). In reviewing the Commis-

sion's factual findings, we will affirm them whenever they are "supported by substantial evidence when viewed in light of the whole record before the court." *Id.* § 63–46b–16(4)(g). Such findings will "not be overturned if based on substantial evidence, even if another conclusion from the evidence is permissible." *Hurley v. Board of Review of Indus. Comm'n,* 767 P.2d 524, 526–27 (Utah 1988). A party seeking to overturn the Commission's factual findings "must *marshall* [sic] all of the evidence supporting the findings and show that despite the supporting facts, and in light of the conflicting or contradictory evidence, the findings are not supported by substantial evidence." *Grace Drilling Co. v. Board of Review of Indus. Comm'n,* 776 P.2d 63, 68 (Utah Ct.App.1989).

■ We apply an intermediate standard of review to the Commission's order requiring a medical panel hearing because the Legislature has explicitly delegated discretion to the Commission to apply the law in this area. *See* Utah Code Ann. § 35–1–77(2)(e) (1994); *Lander v. Industrial Comm'n,* 894 P.2d 552, 555 (Utah Ct.App.1995). Under this standard, we will affirm the Commission's decision so long as it falls within "the bounds of reasonableness and rationality." *Smith v. Mity Lite,* 939 P.2d 684, 686 (Utah Ct.App. 1997) (citation omitted).

We review petitioner's claim that the Commission erred in refusing to find that Judge George violated the UAPA by instructing Brown & Root's attorney to draft proposed findings of fact and conclusions of law under Utah Code Ann. § 63–46b–16(4)(e) (1997). This section allows us to grant relief to an individual who has been substantially prejudiced because "the agency has engaged in an unlawful procedure or decisionmaking process, or has failed to follow prescribed procedure." *Id.* Under this section, we review the Commission's decision for correctness, with no deference given to the Commission's expertise. *See Krantz v. Utah Dep't of Commerce,* 856 P.2d 369, 370 (Utah Ct.App.1993).

## ANALYSIS

### 1. Findings of Fact

■ We turn first to petitioner's challenge to the Commission's factual findings. Specif-

ically, petitioner assails the Commission's determination that he is not permanently and totally disabled as a result of his asthma, that the industrial accident did not cause his depression, and that he lacks credibility as a witness. However, petitioner has failed to marshal all evidence supporting the Commission's findings or to establish that the findings are clearly erroneous. Petitioner ignores the medical panel's determination that he is not totally disabled as a result of his asthma and disregards the fact that four medical doctors found no direct causal relationship between the industrial accident and his depression. Also, petitioner fails to discuss the numerous factors in his life, which the panel determined, contributed to his depression. Finally, petitioner overlooks the Commission's findings that his testimony was exaggerated and that psychological testing indicated that he lacks credibility.

█ Instead, petitioner merely states those facts most favorable to his position and ignores the contrary evidence. This is not adequate. *See South Cent. Tel. Ass'n v. Utah State Tax Comm'n,* 951 P.2d 218, 226 (Utah 1997); *Intermountain Health Care v. Industrial Comm'n,* 839 P.2d 841, 844 (Utah Ct.App.1992). When a party fails to marshal the evidence, we assume the record supports the Commission's findings. *See Intermountain Health,* 839 P.2d at 844. We have shown no reluctance to affirm when the petitioner has failed to meet its marshaling burden. *See, e.g., Turnbaugh v. Anderson,* 793 P.2d 939, 944 (Utah Ct.App.1990). Therefore, we decline to consider petitioner's challenge to the Commission's findings of fact.

## 2. Due Process

█ Petitioner argues that the Commission violated his due process rights under the UAPA and the Utah Constitution by denying him a hearing on his claim for permanent total disability benefits as it relates to his asthma injury. In other words, petitioner maintains that by limiting the hearing to the issue of the causation of his depression, the Commission denied him the opportunity to

have his permanent disability claim for asthma determined. However, petitioner failed to present this issue to the Commission for review. Petitioner's Motion for Review to the Commission merely states that Judge George's decision denying his claim for asthma related permanent total disability compensation was "a clear abuse of discretion." In fact, petitioner never mentioned the UAPA or Utah Constitution nor did he assert a violation of his due process rights. It is well settled that issues not raised before the Commission are waived on appeal. *See Gibson v. Board of Review of Indus. Comm'n,* 707 P.2d 675, 677 (Utah 1985); *Pease v. Indus. Comm'n,* 694 P.2d 613, 616 (Utah 1984); *Ashcroft v. Indus. Comm'n,* 855 P.2d 267, 268–69 (Utah Ct.App.1993). The rationale is that by raising an issue at the administrative level, "either the administrative law judge or the Commission could have adjudicated the issue." *Pease,* 694 P.2d at 616. Here, the Commission was not given the opportunity to resolve this issue because the issue was not brought to its attention. Therefore, we do not address this argument further.

## 3. Medical Panel

Petitioner urges us to declare that the Commission erred in ordering a hearing on the medical panel's report. As support for this proposition, petitioner contends that Brown & Root waived its right to object to the panel's report by failing to act within the prescribed time limits. This argument is without merit.

█ Utah Code Ann. § 35–1–77(2)(c) (1987) [1] allows a party to file a written objection to a medical panel report within fifteen days of its issuance. Once filed, the Commission may schedule a hearing to determine the issues and facts involved. *See id.* § 35–1–77(2)(e). In this case, Brown & Root never contested the panel's report because it was favorable to their position. Instead, Brown & Root filed a timely Motion to Review Judge Allen's decision to reject the panel's finding that petitioner's depression resulted

---

1. Section 35–1–77 was subsequently amended and recodified at Utah Code Ann. § 34A–2–601 (1997). However, both parties agree that the 1987 version of section 35–1–77 governs this 1987 claim.

from factors other than the industrial accident. Because Brown & Root challenged Judge Allen's decision and not the panel's findings, the time limitations contained in section 35–1–77 do not apply.

█ Furthermore, the Commission is the ultimate fact finder and section 35–1–77 grants the Commission broad discretion to determine whether a medical panel hearing will aid it in this process. *See Lander,* 894 P.2d at 556; *Ashcroft,* 855 P.2d at 269. In this case, Judge Allen initially referred the case to a medical panel which determined that petitioner's depression was not caused by the industrial accident. However, the panel's report failed to provide a detailed explanation for this conclusion. The Commission felt that without such an explanation any final disability determination could be flawed. Therefore, the Commission ordered a further hearing on the panel's report to obtain additional information regarding the causation of petitioner's depression.

In *Hackford v. Industrial Comm'n,* 12 Utah 2d 250, 364 P.2d 1091, 1093 (Utah 1961), the Utah Supreme Court stated that "[i]t is both the privilege and the duty of the Commission to have before it all of the competent evidence having a material bearing on the issues necessary to consider in making the award." In vacating an order of the Commission because of a deficiency in the evidence supporting a medical panel report, the *Hackford* court noted that "[u]pon remand it was the prerogative of the Commission either to make a determination upon the evidence ... or if it deemed the interests of justice to so require, to order and hold a supplemental hearing to allow the parties to present additional evidence." *Id.* Regarding petitioner's claim for disability compensation, the key issue in this case was the cause of his depression. Certainly, the Commission was entitled to know why the panel believed that petitioner's depression was not caused by the industrial accident. Without this additional information the Commission could not make an informed decision. In fact, it may have been an abuse of discretion if the Commission failed to refer the case back to the panel because of the uncertainty of the causal connection between the industrial accident and

petitioner's depression. *See Willardson v. Industrial Comm'n,* 904 P.2d 671, 675 (Utah 1995); *Champion Home Builders v. Industrial Comm'n,* 703 P.2d 306, 308 (Utah 1985). The Commission's attempt to obtain additional information from the panel concerning their report was neither irrational nor unreasonable. Thus, we hold the Commission was within the bounds of reasonableness and rationality in ordering a hearing on the medical panel's report.

### 4. Findings Prepared by Prevailing Party

█ Finally, petitioner contends that the Commission erred in sanctioning Judge George's request that Brown & Root's attorney draft proposed findings of fact and conclusions of law. The law is well settled that a trial court may ask counsel—typically the prevailing counsel—to submit findings to aid the court in making these necessary determinations. *See Boyer Co. v. Lignell,* 567 P.2d 1112, 1113–14 (Utah 1977); *State v. James,* 858 P.2d 1012, 1015 (Utah Ct.App.1993); *Hoth v. White,* 799 P.2d 213, 218 (Utah Ct. App.1990). While that practice is more common in the trial courts of this state than it is with our administrative law judges, the Utah Supreme Court has approved of this practice in administrative proceedings. In *Erkman v. Civil Service Commission,* 114 Utah 228, 198 P.2d 238, 242 (1948) the supreme court stated that

> [i]t is the custom of courts of law, at least in this jurisdiction, for the court to ask counsel for the prevailing party to draw proposed findings of fact. That practice is so general as to be said to be the universal practice in this jurisdiction.... There is no good reason why the same procedure should not be followed by [administrative agencies].

█ Other jurisdictions comport with this practice. *See Willapoint Oysters, Inc. v. Ewing,* 174 F.2d 676, 694 (9th Cir.1949) (explaining that "even in adjudications, there is no constitutional prohibition against the findings and conclusions being drawn by the successful party at the direction ... [of the] administrative hearing officer"); *Rudin v. Nevada Real Estate Advisory Comm'n,* 86 Nev. 562, 471 P.2d 658, 660 (1970) (stating

that "[i]n court litigation the findings and judgment routinely are prepared by counsel for the prevailing party. We see no reason for denouncing that practice in administrative agency matters"); *Nunez v. Smith's Management Corp.*, 108 N.M. 186, 769 P.2d 99, 101 (Ct.App.1988) (finding no error in ALJ's verbatim adoption of prevailing party's proposed findings of fact and conclusions of law).

Furthermore, there is no indication from the record that Judge George failed to adequately guide defense counsel in counsel's preparation of the proposed decision. At the end of the hearing, Judge George explained both the factual and legal basis for his decision. Also, he specifically retained the right to accept, reject, or modify the proposed decision. Most importantly, the order issued by Judge George is consistent with his oral decision announced at the end of the hearing and bears his signature. Therefore, we find no merit in petitioner's contention that the Commission erred in approving Judge George's request that Brown & Root's attorney draft proposed findings of fact and conclusions of law.[2]

## CONCLUSION

Because petitioner failed to properly marshal the evidence in support of the Commission's factual findings, we decline to disturb those findings. Further, we conclude that petitioner's due process challenge was improperly raised for the first time on appeal.

Also, we hold that the Commission's decision to order a hearing on the medical panel's report was reasonable and rational in light of the uncertainty surrounding the source of petitioner's depression. Finally, we find no error in the Commission's decision to approve Judge George's request that Brown & Root's attorney prepare findings of fact and conclusions of law. For the foregoing reasons, we affirm the order of the Commission denying petitioner's Motion for Review.

Affirmed.

PAMELA T. GREENWOOD, Judge, concurs.

ORME, Judge, dissenting in part:

I concur fully in the court's opinion, except that I must dissent from the majority's ringing endorsement of the administrative law judge's delegation to prevailing counsel of the important task of drafting findings of fact and conclusions of law. As far as I am aware, this has not been the contemporary practice of law-trained administrative law judges in this state.[1] On the contrary, Utah ALJs generally—and those adjudicating workers compensation cases in particular—have routinely prepared their own findings and conclusions. Their work product has, with rare exceptions, been excellent, not only because findings prepared by the actual fact finder are inherently better than those prepared by a nonneutral delegee one step removed from decisional responsibility,[2] *see*

---

**2.** The majority notes with caution the separate opinion of J. Orme. Contrary to his strongly expressed views, the majority feels that the evolving practice of having counsel assist an administrative law judge, or any other judicial officer for that matter, in the preparation of draft findings of fact, conclusions of law, and orders, is a reasonable practice. Such proposed documents are always subject to the review of opposing parties and the judicial officer. The ALJ or judge retains the obligation to carefully consider the proposed documents, and to revise them as needed to accurately reflect the decision. However, *having so done, nothing significant is gained by* insisting that the judge or ALJ personally draft each word.

**1.** In this regard, it should be noted that the *Erkman* case, cited in the main opinion as approving an administrative body's delegation to counsel of the responsibility for preparing find-

ings of fact, involved a local administrative board whose members were not law-trained. *See Erkman v. Civil Serv. Comm'n of Provo*, 114 Utah 228, 236, 198 P.2d 238, 242 (1948) ("The commissioners, generally being laymen, are not ordinarily skilled in preparing papers of this kind, and when the drawing of findings of fact by counsel for the prevailing party might be a relatively simple matter, the same matter might be extremely difficult for members of the commission.").

**2.** Judge J. Skelly Wright, in rather passionate terms, identified "the primary purpose" for having trial judges prepare their own findings, while at the same time staking out his view of the import of Rule 52 of the Federal Rules of Civil Procedure:

Who shall prepare the findings? Rule 52 says the court shall prepare the findings. "The

*generally United States v. El Paso Natural Gas Co.*, 376 U.S. 651, 656 & n. 4, 84 S.Ct. 1044, 1047 & n. 4, 12 L.Ed.2d 12 (1964), but also because continual feedback from the Industrial Commission and from this court, as well as the skill that comes with repetition and practice, help insure findings that are sufficiently detailed and otherwise "more helpful to the appellate court." *Id.* at 656, 84 S.Ct. at 1047.

While it is true that custom, workload, and lack of staff have combined to make delegation to counsel more the norm in the district courts of this state, this approach is more a necessary evil than a model to be emulated. *See generally Automatic Control Prods. Corp. v. Tel–Tech, Inc.*, 780 P.2d 1258, 1263–64 (Utah 1989) (Zimmerman, J., concurring in the result). Indeed, whether due to increased availability of law clerks, providing judges with personal computers, a change in the local legal culture, or some combination of factors, we are seeing increasing numbers of cases where the findings of fact are simply included in a memorandum decision prepared by the trial judge. Especially given this commendable trend, it would be a shame if ALJs for state administrative boards and agencies were to reverse direction and begin regularly delegating the responsibility to counsel. Hopefully Judge George's delegation here was only a fluke or an experiment. In any event, I, for one, would not wish to encourage any expansion of the practice.

court shall find the facts specifically and state separately its conclusions of law." We all know what has happened. Many courts simply decide the case in favor of the plaintiff or the defendant, have him prepare the findings of fact and conclusions of law and sign them. This has been denounced by every court of appeals save one. This is an abandonment of the duty and the trust that has been placed in the judge by these rules. It is a noncompli-ance with Rule 52 specifically and it betrays the primary purpose of Rule 52—the primary purpose being that the preparation of these findings by the judge shall assist in the adjudication of the lawsuit.
*United States v. El Paso Natural Gas Co.*, 376 U.S. 651, 656 n. 4, 84 S.Ct. 1044, 1047 n. 4, 12 L.Ed.2d 12 (1964) (quoting *Seminars for Newly Appointed United States District Judges* 166 (1963)).